A03A1730. GRESHAM & ASSOCIATES, INC. v. STRIANESE et al.
(595 SE2d 82)

ANDREWS, Presiding Judge.

Gresham & Associates, Inc., a wholesale insurance seller, claims that while Anthony T. Strianese, the former head of its property insurance department, was employed at Gresham, he secretly collaborated with another insurance company, Brown & Brown, Inc., to plan a competing wholesale insurance company. After Strianese terminated his employment with Gresham and started the competing company with Brown & Brown as co-owner, Gresham filed suit alleging that Strianese violated fiduciary duties owed to Gresham, and that Brown & Brown tortiously interfered with Gresham's business relations with its customers and employees. Gresham appeals from the trial court's grant of summary judgment in favor of Strianese and

Brown & Brown.[1] For the following reasons, we affirm in part and reverse in part.

1. Gresham claims the trial court erred by granting summary judgment to Strianese because factual questions exist as to whether he violated fiduciary duties owed to Gresham.

(a) In granting summary judgment to Strianese on this issue, the trial court assumed for purposes of its order that Strianese owed fiduciary duties to Gresham. We find that factual issues exist as to whether Strianese's position as a vice president of Gresham made him a corporate officer who had a fiduciary relationship with the corporation and was thus held to the standard of utmost good faith and loyalty. *Quinn v. Cardiovascular Physicians, P.C.*, 254 Ga. 216, 217 (326 SE2d 460) (1985); OCGA § 14-2-842.

While Strianese was a vice president in charge of Gresham's wholesale property insurance department and an at-will Gresham employee, he met with representatives of Brown & Brown, an insurance company which was also one of the department's retail customers, and developed a plan to create a competing wholesale insurance company which would be co-owned by him and Brown & Brown. Thereafter, Strianese submitted his resignation to Gresham and left to start the new company.

> When [former] corporate officers have embarked upon an enterprise in competition with the corporation to which fiduciary duties were owed, their conduct has been held to be actionable when they have engaged in breaches of their fiduciary duties before termination of their at-will employment.

*American Bldgs. Co. v. Pascoe Bldg. Systems*, 260 Ga. 346, 349 (392 SE2d 860) (1990). However, a corporate officer does not breach fiduciary duties owed to the corporation simply by making plans to start a competing company while still employed by the corporation. *E. D. Lacey Mills, Inc. v. Keith*, 183 Ga. App. 357, 362 (359 SE2d 148) (1987); *American Bldgs. Co.*, 260 Ga. at 349. Even before termination of employment, "[an officer] is entitled to make arrangements to compete [and] can properly purchase a rival business and upon termination of employment immediately compete." (Citation and punctuation omitted.) *Keith*, 183 Ga. App. at 362-363. But during the term of

---

[1] After Gresham dismissed Counts 1, 2, 4, 7, and 8 of its nine-count complaint brought against Strianese, Brown & Brown, and others, the trial court granted summary judgment to the remaining defendants on the remaining counts. Gresham appeals only from the trial court's grant of summary judgment to Strianese on Count 3 and to Brown & Brown on Counts 5 and 9.

employment with the corporation, the officer may not solicit customers for a competing company or otherwise engage in direct competition with the corporation's business. Id. at 363.

The record shows that, during his employment with Gresham, Strianese finalized plans to start a competing company, but he did not start the company and compete with Gresham until after he terminated his employment. There is evidence that Strianese's new company took business from Gresham, but there is no evidence that Strianese solicited customers for the new company while he was employed by Gresham, nor is there any evidence that Strianese profited at Gresham's expense or otherwise failed to fulfill his duties as vice president during his employment with Gresham. Accordingly, there is no basis on the present record for Gresham's claim that Strianese breached his fiduciary duties when he planned for and started the competing company. *Nilan's Alley, Inc. v. Ginsburg*, 208 Ga. App. 145-146 (430 SE2d 368) (1993). The trial court correctly granted summary judgment in favor of Strianese on this claim.

(b) Gresham claims that, while Strianese worked for Gresham, he violated his fiduciary duties by soliciting Gresham's property department employees to leave Gresham and work for his planned new company. The record shows that, while Strianese held his position over the property department at Gresham, he revealed his plans to start a competing company to three at-will Gresham property division employees. When Strianese subsequently tendered his resignation from Gresham, all three of these employees, comprising nearly the entire property department, simultaneously tendered their resignations and went to work for Strianese's competing company. Although there is evidence that two of the employees left because they were dissatisfied with their Gresham employment, there is also evidence that, while Strianese headed Gresham's property department, he met with department employees, discussed the planned competing company, and named two of the Gresham employees as potential employees of the new company in a written proposal to Brown & Brown which included proposed compensation packages. There was also evidence that while working for Gresham, Strianese arranged for Brown & Brown to loan money to one of the Gresham employees to enable the employee to repay a 401(k) loan she had with Gresham, and that he advised another Gresham employee on compensation package negotiations with Brown & Brown. While Strianese remained as head of the Gresham property insurance department, offers were eventually made to the employees to leave Gresham and take positions with the planned new company. We find factual issues exist as to whether Strianese solicited or induced these employees to leave in violation of his fiduciary duties, or whether they left for wholly unrelated reasons. Accordingly, the trial court

erred by granting summary judgment to Strianese on the claim that he breached fiduciary duties owed to Gresham by soliciting or inducing Gresham employees to resign and work for the competing company. *Keith*, 183 Ga. App. at 363. The trial court also erred by holding that, even if such solicitation or inducement occurred, Strianese was protected by the privilege of fair competition. To the contrary, a corporate employee owing fiduciary duties to the corporation is not a privileged competitor of the corporation. Compare *Orkin Exterminating Co. v. Martin Co.*, 240 Ga. 662, 665-667 (242 SE2d 135) (1978).

2. Gresham claims the trial court erred by granting summary judgment in favor of Brown & Brown because factual questions exist as to whether Brown & Brown tortiously interfered with Gresham's business relations with its customers and with Strianese and other employees.

(a) There is no evidence to support a claim that Brown & Brown tortiously interfered with Gresham's business relations with its customers. As set forth in Division 1, supra, Strianese engaged in no wrongful action by simply planning to create a competing company while he was employed as an officer with Gresham. It follows that Brown & Brown did not wrongfully interfere with Gresham's customers by collaborating with Strianese to plan the competing company while Strianese was employed by Gresham. Although there is evidence that the new company jointly owned by Brown & Brown and Strianese competed with and took customers away from Gresham, this occurred after Strianese terminated his employment with Gresham. The trial court correctly granted summary judgment to Brown & Brown on this claim.

(b) There is also no evidence to support a claim that Brown & Brown tortiously interfered with Gresham's contractual relations with Strianese. The trial court found that the evidence showed Brown & Brown did not induce Strianese to leave his at-will employment with Gresham; rather Strianese conceived the plan for the new company and pitched the idea to Brown & Brown. But even if there was evidence that Brown & Brown, acting as a competitor of Gresham, offered inducements to Strianese to leave his at-will employment with Gresham and join with Brown & Brown to form a competing company, Brown & Brown's actions were protected by the privilege of fair competition, which guards against the imposition of undue restraints on the pursuit of employment opportunities in the marketplace. *American Bldgs. Co.*, 260 Ga. at 348-349. There is no evidence that Brown & Brown lost the privilege by unfair competition or by using wrongful means to induce Strianese. Id. The trial court correctly granted summary judgment to Brown & Brown on this claim.

(c) Finally, we find no basis in the record for the claim that Brown & Brown tortiously interfered with Gresham's business relations with its other at-will employees in the property division by soliciting these employees for the planned competing company. Brown & Brown had a right to create a company to compete against Gresham in the wholesale property insurance business and to assert the defense of fair competition against Gresham's tortious interference claims.

> But the privilege of fair competition protects a competitor who solicits another [competing] employer's at-will employee only when the standards in Restatement of Torts, § 768 are followed. The privilege is not applicable where a competitor destroys or inflicts substantial injury [on the competing employer] by means of attracting away all or a large percentage of personnel upon whom the employer must depend to function, especially if other circumstances are present.

(Citations and punctuation omitted.) *Carroll Anesthesia Assoc. v. AnestheCare, Inc.*, 234 Ga. App. 646, 648 (507 SE2d 829) (1998); *Orkin Exterminating Co.*, 240 Ga. at 666-667. Under these standards, the competitor's fair competition privilege is lost when an illegal restraint of trade or competition under federal or state statutes is created, or when wrongful means are used to solicit the competing employer's employees. *American Bldgs. Co.*, 260 Ga. at 349. Gresham produced evidence that, after collaborating with Strianese to plan the competing company, Brown & Brown solicited and hired away three additional Gresham employees who along with Strianese comprised nearly the entire Gresham wholesale property insurance department. Although there was evidence that the loss of these employees harmed Gresham's wholesale property insurance business, Gresham's board chairman testified that Gresham had other employees who were "totally capable of handling property insurance" and were "totally capable of servicing and producing business."

There is no evidence of an illegal restraint of trade or competition and no evidence that Brown & Brown used wrongful means to solicit the Gresham employees. Even though Brown & Brown solicited and hired away most of Gresham's property insurance department, there is nothing in the record which could support a conclusion that Brown & Brown's solicitation destroyed or substantially injured Gresham's ability to function as an effective competitor. Compare *Architectural Mfg. Co. v. Airotec, Inc.*, 119 Ga. App. 245, 248-251 (166 SE2d 744) (1969); *Carroll Anesthesia Assoc.*, 234 Ga. App. at 648-649. Accordingly, the trial court correctly granted summary judgment to Brown & Brown on this claim.

*Judgment affirmed in part and reversed in part. Barnes and Adams, JJ., concur.*

DECIDED JANUARY 27, 2004 —
RECONSIDERATION DENIED FEBRUARY 12, 2004

*Chamberlain, Hrdlicka, White, Williams & Martin, James L. Paul, Eric C. White, Crumbley & Crumbley, R. Alex Crumbley*, for appellant.

*Smith, Welch & Brittain, A. J. Welch, E. Gilmore Maxwell, Porter, Orrison & Doster, J. Alexander Porter, Simuel F. Doster, Jr.*, for appellees.