**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**April 6, 2021**

# In the Court of Appeals of Georgia

A21A0327. MIMBS v. HENRY COUNTY SCHOOLS.

COLVIN, Judge.

In late April 2017, Sheri Mimbs was informed that she would not be rehired as a fifth-grade teacher at a Henry County elementary school. Believing that she had been punished for refusing to raise her students' low grades, Mimbs retained an attorney to pursue a claim under the Georgia Whistleblower Act, OCGA § 45-1-4, and filed her complaint on May 3, 2018. The trial court granted summary judgment to the school district on the ground that the one-year statute of limitation had run. On appeal, Mimbs argues that the grant was in error because a question of fact remains as to whether the limitation period had run. We find no error and affirm.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the

nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.

(Emphasis omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491, 491 (405 SE2d 474) (1991). "OCGA § 45-1-4 sets forth a specific waiver of the County's sovereign immunity and the extent of such waiver[,]" however. *Colon v. Fulton County*, 294 Ga. 93, 95 (1) (751 SE2d 307) (2013), overruled on other grounds, *Rivera v. Washington*, 298 Ga. 770, 778 (784 SE2d 775) (2016). Under these circumstances, "the conditions and limitations of the statute . . . [must] be strictly followed." (Citation and punctuation omitted.) *Columbus Consol. Gov't. v. Woody*, 342 Ga. App. 233, 238 (802 SE2d 717) (2017). Further, as "the party seeking to benefit from the waiver of sovereign immunity," Mimbs "bears the burden of proving such waiver." (Citation and punctuation omitted.) *Ga. Dept. of Comm. Health v. Data Inquiry, LLC*, 313 Ga. App. 683, 685 (1) (722 SE2d 403) (2012).

Although we view the record in Mimbs' favor, the relevant facts are not in dispute. The record shows that after the commencement of the school year at Cotton Indian Elementary School, Mimbs was hired for the period November 29, 2016, to

June 30, 2017. During her first months of teaching, Mimbs failed to post grade-level standards in her classroom, failed to collect data on her students needing academic intervention, and failed to communicate with parents as to ensure that her students were turning in their assignments on time. A staff member observing one class saw that Mimbs failed to correct misspelled words during a spelling bee and then remained at her desk for over ten minutes before the next activity, during which time most students did not follow her instructions. The observer repeatedly contacted Mimbs to discuss her observations, but Mimbs did not make herself available for a meeting. On February 10, 2017, after taking three days of sick leave, Mimbs became angry with and filed a grievance against the teacher who had covered her class because he had criticized her classroom management and suggested that she show more "love" for her students. After filing her grievance, Mimbs left for the day.

After Mimbs submitted her February progress report grades, the assistant principal left Mimbs a note saying that "[s]tudents should not have less than a [grade of] 60" and asking her to "fix the grades." Co-workers told Mimbs that there was no district policy authorizing administrators to insist that teachers change grades. In a meeting shortly afterward, however, the assistant principal told Mimbs that the school's policy, expressed in its "handbook," was that no student receive a failing

grade and that Mimbs would be terminated if she did not change her students' grades. No such written policy appears in the record, and the principal of the school later testified that she had never seen such a document.

On February 28 and March 7, 2017, the assistant principal sent Mimbs emails reminding her that grades were due on March 13. When Mimbs failed to post her grades on time, the assistant principal asked Mimbs to meet with her, but Mimbs failed to do so. On March 21, and citing the assistant principal's records, the principal issued Mimbs a "letter of redirection" concerning her failure to post grades on time. On the same day, Mimbs met with a district administrator and told her that the assistant principal was asking Mimbs to "break the law" by changing grades. The administrator responded that there was no policy requiring the raising of grades, that Mimbs' communication at the meeting was sufficient to initiate a complaint to the district, and that the administrator would inform the principal about Mimbs' disclosure.

On March 23, 2017, Mimbs met with the principal, who confirmed that the assistant principal had already met with Mimbs but repeated that the school's policy was to issue passing grades to its students. On April 24, 2017, without any prior consultation with the district, the principal again met with Mimbs and told her that

the school "[would] not have a spot for [Mimbs] next year[.]" Mimbs refused the principal's offer that she resign in lieu of non-renewal. On April 26, the principal asked Mimbs again whether she had decided to resign, with Mimbs responding that she had not. That same day, Mimbs' counsel sent a certified letter to a second district administrator alerting her that Mimbs planned to file a claim for retaliation under the Georgia Whistleblower Act.

On April 27, 2017, the Henry County superintendent issued written notice of Mimbs' non-renewal, which Mimbs' counsel received on May 3. Exactly one year later, on May 3, 2018, Mimbs filed her whistleblower complaint, alleging that she was fired in retaliation for refusing to change students' grades from failing to passing. After discovery, the school district moved for summary judgment on the grounds that the one-year statute of limitation had run and that Mimbs had not reported her superiors before her non-renewal and had failed to prove that her termination was the result of anything other than her own performance. The trial court granted the school district summary judgment on the first of these grounds, and this appeal followed.

Mimbs argues that a question of material fact remains as to whether she filed her complaint within one year of learning that the district would not renew her contract. We disagree.

5

OCGA § 45-1-4 provides in relevant part:

(e) (1) A public employee who has been the object of retaliation in violation of this Code section may institute a civil action in superior court for relief . . . *within one year after discovering the retaliation or within three years after the retaliation, whichever is earlier*.

(Emphasis supplied.) Subsection (a) (5) of the same statute defines "retaliation" as

the discharge, suspension, or demotion by a public employer of a public employee or any other adverse employment action taken by a public employer against a public employee in the terms or conditions of employment for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency.

Further,

[t]o establish a claim under the [whistleblower] statute, a public employee must demonstrate that (1) he was employed by a public employer; (2) he made a protected disclosure or objection; (3) he suffered an adverse employment action; and (4) there is some causal relationship between the protected activity and the adverse employment action.

(Footnote omitted.) *Albers v. Ga. Bd. of Regents*, 330 Ga. App. 58, 61 (1) (766 SE2d 520) (2014).

As we have noted, OCGA § 45-1-4 (e) requires that a plaintiff asserting a whistleblower claim bring that claim "within one year after discovering the retaliation or within three years after the retaliation, whichever is earlier." Here, Mimbs' own evidence showed that on April 24, 2017, the principal told her that her contract would not be renewed for the following year and gave her the option of resignation rather than non-renewal. It is also undisputed that the district had no input into and did not reconsider the principal's decision not to renew Mimbs's contract. Rather, and only a few days later, the school district formalized that decision in writing. Mimbs thus "received notice explaining an upcoming adverse employment action" on April 24, 2017, when she learned that the principal "had made a definitive decision to take adverse action" against her, such that the one-year statute of limitation laid out in OCGA § 45-1-4 (e) began to run. See *Albers*, 330 Ga. App. at 65 (2) (physical precedent only).[1]

Because undisputed facts show that Mimbs filed her complaint more than one year after discovering the alleged retaliation against her, Mimbs has failed to carry

---

[1] In *Albers*, there was evidence in the form of testimony from the university's human resources director that the university "did not make a final termination decision until right before" plaintiff was actually terminated. Id. (punctuation omitted). No such evidence appears here.

7

her burden of showing that she is authorized to pursue her action against the school district. See OCGA § 45-1-4 (e); *Tuttle v. Bd. of Regents*, 326 Ga. App. 350, 353-354 (1) (a) (756 SE2d 585) (2014) (physical precedent only) (where there was "no dispute" that the plaintiff "discovered the retaliation . . . that his position was to be terminated" eight weeks beforehand, the statute of limitation began to run on the date of the discovery); *Edwards v. Gwinnett Cty. School District*, 977 F.Supp.2d 1322, 1335 (III) (B) (N.D. Ga. 2013) (granting summary judgment to the school district when "the adverse action" putting the plaintiff teacher on notice concerning the alleged retaliation was the school principal's "recommendation of non-renewal," which occurred more than a year before plaintiff filed her Georgia Whistleblower Act complaint).

For the above reasons, the trial court did not err when it granted summary judgment to the school district on Mimbs' whistleblower complaint.

*Judgment affirmed. Dillard, P. J., and Mercier, J., concur*.